Mary Whaley of the Parish of Bruton near Williamsburg in the Colony of Virginia but at the time of her Death and several Years before at the Parish of St. Marg’ts Westminster in the County of Middlesex Widow made her last Will and Testa, in Writing under Hand and seal bearing date 16th of Peb’r 1741, and executed the same in the Presence of three Witnesses who subscribed their Names thereto did thereby among other things, give devise & Bequeath as follows, I give Devise and Bequeath unto the Minister & Church Warden for the time being of the s’d Parish of Bruton in the County of York in the Colony of Virginia and their Successors a Certain Peice or Parcel of Land in the said Parish of Bruton Containing by Estimation 10 a. little more or less together with Matteys School House and Dewling House lately Erec’d and Built thereon for the Use of a School-master to teach the neediest Children in the same Parish who shall be offered (in the Art of Reading Writing and Arethmetic) and Bounded by the Main Road leading to Queens Creek and beginning at a Gully of Runing Water surrounding the s’d 10 Acres of Land and adjoining on Mr. Peppers Land which peice or parcel of Land, Schoolhouse & Dwelling Plouse together also with all out Houses, Gardens and appurtenances thereunto Belonging, I give and devise unto the s’d Minister and Church Wardens for the time Being and their successors forever upon Trust to Continue the same for the Use Benefit and Behoof of the said Matteys school for the purposes above mentioned to Eternalize Matteys School by the Name of Matteys School forever and to and for no other Use intent or purpose whatever I give to Matteys School af’d the summ of fifty Pounds Sterling to be paid to the said Minister and Church Wardens for the time being and their Successors at the rate of ten pounds A year for the Use *B364 of the same School and I hope it will be an incouragement to promote the Education of Children there [335] The rest and residue of my Estate after all the above mentioned Legacies are paid and satisfied except and reserving to myself the Sum of one hundred Pound to my own Disposal by Word of Mouth Codicil or Writing as I shall think proper I give & Bequeath the same to the Minister and Church Wardens for the time being of the said Parish of Bruton in Trust for the Use & Behoof of the s’d School called Matteys school for the Purposes above mentioned
And made James Frauney Ex’r of her s’d Will Who hath Proved the same in the Prerogative Court of Canterbury and taken upon him the Execution thereof.
The s’d Mary Whaley died 31 January 1742
Vide the Will
By an Act of Parliament made in the 9th Year of his Present Majesty King George the Second intitled An Act to Restrain the Disposition of Lands whereby the same Became unalienable is among other things Enacted that from and after the 24. of June which shall be in the Year of our Lord 1736 no Mannors Lands and Tenem’ts Rents advousons or other Hereditaments Corporeal or Incorporeal whatsoever or any sum or sums of Money Goods Chattels Stocks in the Publick Funds Securities for Money or any other Personal Estate whatsoever to be laid out or disposed of in the Purchasing of any Lands or Tenements or Hereditaments shall be given granted aliened Limited released transferred or assigned or appointed or any ways Conveyed or settled to or upon any Person or Persons Bodies Pollitick or Corporeate or otherways for any Estate or Interest whatsoever or anyways Charged or incumbered by any Person or Persons whatsoever in Trust or for the Benefit of any Charitable Use whatsoever unless such gift Conveyance appointment or Settlem’t of any such Lands or Tenements or Hereditaments sum or Sums of Money or Personal Estate (other than Stocks in the Public Funds) be and be made by Deed indented sealed and Delivered in the presence of two or more Credible Witnesses 12. Calender Months at Least before the Death of swch Donor or Grantor includ’g the Days of Execution & Death and be inrolled in his Majesties High Court of Chancery within six Kalender Months next after the Execution thereof and unless such stock be transfer’d in the Publick Books usually Kept for that Purpose six Kalender Months at least before the Death of such Donor or Grantor in- *B365 eluding the Days of Transfer & Death unless the same be made to take Effect in Possession for the Charitable Use intending [336] Immediately from the making thereof and be without any Power revocation Reservation Trust Condition Limitation, Clause or agreement whatsoever for the Benefit of the Donor or Grantor or any other Person or Persons Claiming under him
And be it further Enacted by the authority af’d that all gifts Grants Conveyances Appointments Assurances Transfers & .Settlements whatsoever of any Lands Tenements Heriditaments or of any Estate or Interest therein or of any Charge or Incumberance Affecting or to affect any Lands Tenements or Heriditaments or of any Stock money Goods or Chattels or other Personal Estate or Securities for Money to be laid out or disposed of in the purchase of any Lands Tenements or Heriditaments or of any Estate or Interest therein or of any Chare[1] or Incumberance affecting or to affect to or in Trust for any Charitable Uses whatsoever which shall at any Time from and after the 24th of June 1736. be made in any other maner or form than by this Act directed & appointed shall be absolutely and to all intents and purposes nul and void.
The Testatrix did not make any Deed of Gift Conveyance appointment or Settlement of the Lands School House & Dwelling House mentioned in her Will to the Minister & Church Wardens of the Parish of Bruton in Virginia af’d or any other Person or Persons in Trust for the Charity in her Will mentioned or of the rest or residue of her Personal Estate given in and By the s’d Will to the Minister & Church Wardens af’d for the Charity therein mentioned twelve months (or any other time) before her Death acc’g to the s’d Act but only gave the same by her Will to the minister and Church Wardens af’d
Qu’st: Wnether the Devise by the s’d Will to the Minister & Church Wardens for the time being of the s’d Parish of Bruton in Virginia & their successors of the s’d Peice or Parcel of Land with the said Schoolhouse & Dwelling House Built thereon upon Trust in the s’d Devise is a Null & Void Devise by Virtue of the Said Act
[337] Answer. This Act of the 9th George being not expressly mentioned to extend to our american Colonies I am of opinion *B366 it doth not Bind them therefore that the Devise of the Land in Virginia to a Charity is not Void by that act. But as it is a Devise to Persons & their Successors who do not make a Corporation I conceive it is not sufficient to Vest the real Estate but it gives a right to it in Equity in the name of the att. General in Virginia ag’t the Heir at Law
Qu. 2d. Whether the Gift to Matteys School of the s’d Sum of 50£. to be paid to the. Minister & ChurchWardens af’d of Bruton & their successors at ;£.10. a year for the use of the s’d school is a good Bequest to the s’d ministers & Church Wardens af’d and their successors & if the Ex’r of the s’d Will may safely pay the s’d 50^. to them notwithstanding the s’d Act or whether the s’d Gift is null & Void by Virtue of the s’d Act
Answer. I am of opinion this Legacy of £.50. is good and ought to be paid by Installments of ;£l0. annuity till the whole is paid & the Ex’r may safely pay it to the Minister & Church wardens for the Benefit of the school.
Qu. 3d. Whether the Bequest by the said Will of all the rest & residue of the Testatrix’s Personal Estate after payment of her Debts and Legacies to the minister & Churchwardens for the time being of the said parish of Bruton in Trust for the use & Behoof of the said Matteys School for the purposes in the said Will above mentioned is a good Bequest to the said Minister & Churchwardens & if the said Ex’r may safely Pay to the Minister & Church Wardens af’d of Bruton all the Rest & Residue of the Testatrix’s Personal Estate for the purposes & Upon the Trust in the Will mentioned not withstanding the said Act or Whether the Bequest of the rest & Residue of the Testatrix’s Personal Estate is Nul and Void by Virtue of the said Act
Answer. I am of Opinion this residuary Bequest is good & the Ex’r may safely pay the residue to the Minister & Church Wardens
Qu. 4th. Which is the Best and safest way for the Ex’r to act to prevent his Coming into any trouble about the Lands Devised to the Minister & Church Wardens [338] afs’d and also the ^.50. & the Residue of the Testatrix’s Personal Estate Bequeathed upon Trust for the Charitable Uses afores’d
Answer. The safest Way for the Ex’r to act would be for an Amicable suit or information of the Att’o General the Relator of the Minister & Church Wardens ag’t the Ex’r Heir & to Establish the Charity & to have the proper Directions for the Manage *B367 ment of it, if all parties live here it may be brought into the Court of Chancery here but if the Heirs live in Virginia the Information should be brought into the Court of Equity in Virginia & on such information, such Directions may be given as will indimnify the Executor in Relation to his Conduct
Signed D. Ryder
9th March 1743.
Robert Jones Junior, and Sarah his Wife l a 11 + And Dudley Richardson and Martha his Wife j an S
James Shields ...............................Respondent
The Appellants Case.
By a Certain Act of Assembly passed in the Fourth year of Quee Anne it is Enacted that all Negroes within this Dominion or Colony of Virginia shall from thenceforth be adjudged to be real Estate and descend to the Heirs and Widows according to the Custom of Lands of Inheritance in Fee simple in which act it is Declared and Provided that in several Cases in the Act mentioned they should be held and adjudged to be personal Estate in the same Condition they would have been if this Act had never been made and that upon [sic] Which Act was afterwards Explained by [sic\ another act of assembly, which passed in the first year of his present Majesties Reign Entitled an Act to explain and amend the Act of the fourth of Queen Anne by which Act after reciting that that Act [339] had been found beneficial for the preservation and Improvement of Estates in this Colony yet that many mischiefs had arisen from the various Constructions and Contrary Judgments and opinions which had been made and given thereupon whereby many people had been Involved in Lawsuits and Controversies which was still likely to Increase: For remedy whereof and to the End the said Act might be fully Explained and understood; it is Enacted amongst other things, in the words following Viz: that the said Act of the fourth of Queen Anne shall hereafter be Construed and the true Intent and Meaning thereof is hereby declared to be in the several Cases hereafter mentioned as the same is herein after mentioned and declared and not otherwise; viz; that the property of a Slave should be Transferable by Bargain and sale gift or Will in the same manner as if such slave were a Chattle and *B368 no remainder thereof should be Limited other than a Chattle might be by Law, as thereafter mentioned: “ and that where “ any Slave or Slaves had been or should be, Conveyed, Given, “ or Bequeathed or had or should descend to any Feme Covert, “ the Absolute Right property and Interest of- such Slave or “ Slaves was thereby vested and should accrue to and be vested “ in the Husband of such Feme Covert and that where any Feme “ sole is or should be possessed of any Slave or Slaves as of her “ own proper Slave or Slaves the same should accrue to and be “ absolutely vested in the Husband of-such Feme when she shall “ marry
And that where any Person hath heretofore by Deed or Will disposed of any Slaves for the Life or Lives of any person or persons whatsoever with Remainder over, such Remainder should be good to transfer the Absolute property of such Slaves to the persons in remainder: by which Act it is provided that nothing therein should be Construed to alter the property of any Slaves which had been before adjudged to belong to any person whatsoever.
William Pinkethman late of York County in the Colony of Virginia being in his Life time and at the time of his Death seised and possessed of sundry Negro Slaves made his Will the first of December 1712; and therein amongst other things devised seven Negro Slaves, viz Hannibal and Betty his Wife, Peter Follitt, Betty a Girl, and Tom a Boy, Billy a Boy, and Young Hannibal a Boy to his Daughter Rebecca Pinkethman her Heirs and Assignes forever
The Wi]l of Mr. Pinkethman 1. Dec’r 1712.
[340] The Testator soon after died leaving Rebecca his only Child and Heir at Law who afterwards and since the passing this Act of the fourth of Queen Anne, and when she was possessed of the said seven Slaves intermarried with one Robert Cobbs of York County afores’d who by virtue of such his intermarriage became intitled to the absolute and beneficial Interest and property of and in the said seven Slaves and their Increase and upon his marriage possessed himself thereof
The said Rebecca Cobbs afterwards died in the Life time of her said Husband leaving Issue one Daughter Elizabeth her only Child and Heir at Law.
Rebecca died 1712.
*B369 The said Robert afterwards intermarried with another Wife named Elizabeth by whom he had Issue two Children only Viz: the Appellants Sarah and Martha, the said Robert Cobbs being possessed of the said Slaves and other Real & personal Estate duly made his Will dated 10th of December 1725. and thereby after giving sevéral speciñck Legacies “ devised the residue of his Estate Real and personal to his said Wife Elizabeth for her Life; and after her Decease to the Appellants his Daughters Sarah and Martha Equally if then Living ” and of his said Will appointed the said Elizabeth his Wife and one Daniel Allen since deceased Executors who after the Death of the said Robert Cobbs viz; the 21st February 1725 duly proved the same
Upon the Death of Robert Cobbs Elizabeth his Widow and Devisee for Life of the said Slaves intermarried with one Samuel Weldon and they were intitled to have possessed themselves of the said Slaves but the said Eliza’h Cobbs daughter of the said Robert by his First Wife having in the Life time of the said Elizabeth Weldon intermarried with the respondent James Shields of Virginia Aforesaid the said Samuel Weldon and Elizabeth his Wife either under some agreement or through mistake or imposition misjudging her Title were prevailed upon by the said Respondent to permit him to take and keep possession of the said Slaves and their ofspring and Continue the possession during the Life of the said Elizabeth Weldon.
The said James Shields put in his Answer plea and Demurrer to the said Bill
The said plea and Demurrer were argued and the plea ordered to stand for an Answer and the Demurrer being overruled with Costs from which order the respondent prayed an appeal to the General Court but was refused as the said order did not determine the right to the Negroes in Question
The respondent afterwards put in his further Answer and there by and by his former Answer admitted and stated the said [341] Wm. Pinkethmans Will and Death leaving the said Rebecca his Heir at Law seised as aforesaid who afterwards intermarried with Robert Cobbs and by him had the said Elizabeth and Died and that the said Robert made such Will as in the Bill and died leaving Elizabeth his Widow and that he married Elizabeth the daughter of Rebecca and in her right got possession of the several slaves of whom the only then living were Hannibal a Man Jack a Man Squire a Man James a Boy Will a Man George *B370 a Boy Rippoxi a Boy Tom a Boy Betty a Woman and Patt a Girl and insisted that he had a right thereto as the Lands and Slaves of the said Pinkethman descended in Fee to the said Rebecca in 1712; and that they afterwards descended in Pee from the said Rebecca upon her death in 1715. to Elizabeth her only daughter and Heir then an Infant of 11 years who entered and was seised as the Law required; and that the said Robert Cobbs had no right in them at the time of making his said Will but held them as Guardian to his s’d Daughter and in pursuance of a Contract previous to his Marriage as he often declared and disclaimed all right thereto and never mentioned them in his Will and on account of their descending to his said Daugh’r gave a larger share of his own Estate to his other Daughters the Plaintiffs and when he died no inventory was taken but that Hannah Shields being Chosen Guardian obtained a Decree for possession of the said Slaves and Defendant relying on her said Title and having Enjoyed possession so long without interruption plead an Act of Assembly of 4th of Queen Anne for Limitation of Actions in Bar to the Plaintifs’ right to the said Slaves.
The Cause being at Issue and one Witness having been examined, The Cause came on to be heard in the said County Court of York; when it was ordered and decreed that the Plaintiff’s (now appellants) Bill should stand Dismsd without costs on either side.
The appellants conceiving themselves Agrieved by the said Decree of the County Court appealed therefrom to the General Court.
The said Appeal came on to be heard before the said General Court and the Decree of the County Court was affirmed but without Costs
The Apealants conceiving themselves likewise agrieved by the said Decree of the General Court immediately prayed an appeal theiefrom to his Majesty in Council; which was granted accordingly and the Usual security given
The apellants do humbly conceive that the said decree and Dismission are Erroneous and ought to be reversed for the following amongst other
[342] Reasons:
First. That Negro Slaves were in their Nature and before the passing of this Act of the 4th of Queen Anne Chattels in their *B371 own Nature, and what a Husb. there gained the property of in the same manner he gained the property of any other Chattel belonging to the Wife
Secondly. This Stat. of the 4th of Queen Anne neither altered the Law nor intended to alter the Law in this respect this act being made to prevent Negroes from being Distributable amongst the nex of Kin or going to Executors or administrators by which means they woud be divided and dissipated and in order to preserve them intire in Families to make them descendible as Inheritances to the Heir at Law but as to every other respect to leave them as much Chattels as they were before, and Consequently subject to the Husbands acquiring a property therein to the Wifes Slaves by marriage as the Law stood before the passing this Act.
Thirdly. That if a Doubt could have arisen upon the Construction of this Act of the fourth of- the Queen touching this matter that Point is now cleared up and made certain by the Act of the first of his present Majesty: for by this Act of the first of his pres’t Majesty which is neither a Repeal of the fourth of Queen Anne nor an Introduction of any new Law but merely declarative of the sence and mean’g and Effect of the former Statute of the fourth of Queen Anne it is Expressly declared That it was not the intent of that Act of the fourth of Queen Anne to take away or alter that right and property which husbands were In-titled to or might gain in or to such slaves as were the property of their respective Wives
Fourthly. That there never was any Decree or Determination touching the property of the Slaves and their offspring prior to the Exhibiting the Appellants Bill or to the Decree of the county Court of York in the present Cause
Fifthly. That the absolute property of the said slaves became vested in the said Rob’t Cobbs upon his marriage with the said Elizabeth the Devisee and Heir at Law of the said William Pinkethman who first devised the s’d Slaves and the said Rob’t Cobbs had thereby full power to devise the said Slaves and their offspring and as he has devised all his Real and personal Estate to the Appellants Sarah and Martha after the Death of their said Mother, the Appellants Rob’t Jones and Dudley Richardson in their Right are now become well Entitled to the said Slaves and their offspring and therefore the said Court ought not to have decreed the Appellants Bill to be dismissed but ought to have *B372 ordered the [343] said Respondent to have Delivered the said Slaves and their Offspring to the Appellants and to have accounted to the appellants for their Labour from the Death of the said Eliz. Weldon; and also to have ordered the said Appellants their Costs of Suit to be paid by the Respondent
Wherefore the s’d Appellants humbly hope that the s’d Decree of Disml shall be reversed and that such other order shall be made therein, by your Lordships as shall be just.
W. Murray.
K. Evans.
Robert Jones Jun’r and Sarah his Wife; and Dudley Richardson and Martha his Wife (the said Sarah and Martha being two of the Daughters and residuary Devisees of the Estate of Rob’t Cobbs deceased) — Pits, below now Appellants
James Shields Gent. Deft, below and now respondent
The Respondents Case.
An Act of Assembly was passed in Virginia Intitled an Act declaring the Negro Mulatto and Indian Slaves within this Dominion to be Real Estate; whereby it was inter alia, Enacted in the Following Words Viz
“ That from and after the passing this Act all Negro Mulatto “ and Indian Slaves in all courts of Judication and other places “ within this Dominion shall be held taken and adjudged to “ be Real Estate (and not Chattels) and shall descend unto the “ Heirs and Widows of Persons departing this Life according “ to the Custom and manner of Land of Inheritance held in “ Fee simple.”
Another Act of Assembly was afterv ards passed in Virginia intitled an Act for Limitation of Actions and avoiding of Suits; whereby it was inter alia Enacted in the following Viz:
“ That all actions of Trespass quare Clausum fregit, all Actions “ of Trespass, Detinue Actions sur Trover and replevin for taking “ away Goods and Chattels, all Actions of Accounts and upon “ the Case (other than such Accounts as Concern the Trade of “ Merchandize between Merchant and Merchant their Factors “ or Servants) all Actions of Debt grounded upon any Lending or “ Contract without Specialty, all Actions of Debt for Arrerages *B373 “ of Rent, all Actions of Assault and Batterey, menace, wounding “ and Imprisonment or any of them which shall be sued or “ Brought at any time after the end of this present session of “ Assembly shall be commenced and sued within the time and “ Limitation hereafter Expressed and not after, that is to say “ [344] The said Actions upon the Case (other than for Slander) “ and the s’d Actions for Accounts and the said Actions for Tres- “ pass, Debt Detinue and Replevin for goods and Chattels and “ the said Action of Trespass quare Clausum fregit within two “ Years next after the End of this present Session of Assembly, “ or within five Years next after the Cause of such Actions or “ Suit and not after.
“ And the said Actions of Trespass of Assault Baterry wound- “ ing and Imprisonment or any of them within one Year, next “ after the End of this present session of Assembly or within “ three years next after the Cause of such Actions or Suit and “ not after.
“ And the said Action upon the Case for Words within one “ year after the End of this present Session of Assembly, or within “ one year next after the words Spoken and not after.
“ Provided nevertheless and be it further Enacted that if any “ person or Persons that is or shall be intitled to any such Action “ of Trespass for Assault Menace Battery Wounding or Im- “ prisonment be or shall be at the time of any Such cause of “ Action given or accrued fallen or come within the Age of 21. “ Years Feme Covert, Non compos mentis Imprisoned beyond “ the seas out of the Country, that then such persons shall be ‘ ‘ at Liberty to bring the same Actions so as they take the same “ within such times as are before Limited after their coming to “ or being of full age, Discovert, of sane Memory at Large and “ returned from beyond the Seas or from without this Coloney as “ by other persons having no such impediment should be done”
William Pinkethman being seised of an Estate of Inheritance in Fee Simple of and in Sundry Lands and Negro Slaves by his last Will of this date devised to his Daughter and only Child Rebecca Pinkethman and to her Heirs and Assignes forever, seven particular Negroes and died soon after making such Will which was proved (in the County Court) on the 16th of February next after the Date thereof.
The said Rebecca Pinkethman the Devisee was the Testators only Child and heir at Law and as such she Claimed all her *B374 fathers Lands & Slaves and being seised of the same in Fee simple she Intermarried with one Rob’t Cobbs
The said Rebecca Cobbs died in the Year 1715 in the Life time of the said R. Cobbs leaving one Child by him a Daughter Eliz. an Infant of very tender years and the s’d Slaves descended to the s’d Infant Elizabeth as Heir at Law to the said Rebecca her Mother but her Father Rob't Cobbs as Guardian to his s’d Daugh’r and in no other right, took both his s’d Daughter’s Land & Negroes into his Possession and Continued her Negroes upon her Lands and Survived Rebecca his first Wife 10 yrs. [345] Robert Cobbs after his first Wifes Death married a second time Elizabeth by whom he had two other Daughters the now Appellants
Sarah & Martha.
The s’d Rob’t Cobbs altho’ he so long survived his first Wife never set up any pretence to his s’d first Wife’s Inheritance consisting partly in Lands and partly in the said Negroes and their Increase but on the contrary from time to timé declared that the same belonged to his said Daughter by his first Wife & that he had no right to them
The said Rob’t Cobbs made his Will and after some specifick Legacies gave in general words all the rest of his Estate Real & personal after his Debts & Funerals paid to his then Wife Elizabeth during her natural Life and after her decease to be equally Devided between his s’d two daughters by her Sarah and Martha (the now appellants) and appointed his said second Wife Elizabeth and one Dan’l Allen his Executors, and died, soon after the date of his Will the same being proved by both his said Executors upon the 20th of February 1725.
The said Executors never Inventoried or Considered those Negroes as any part of their Testatory Estate.
The s’d Eliz. Cobbs the Widow of the s’d Rob’t Intermarried with one Samuel Weldon since deceased; but she or her after Husb. Weldon never set up any Claim, or pretence to those Negroes altho’ it were their Interest so to have done had it been practicable (she being Devisee for her Life of what ever had been her Husb’ Cobbs own Estate).
Elizabeth the daughter of Rebecca (having Chosen Guardian) dem’d her Slaves from the s’d Weldon and his Wife who readily delivered up the s’d Slaves and their Increase to the s’d Elizabeth.
*B375 And the respondent Shields thereafter Intermarried with the s’d Elizabeth.
After the Death of the s’d Rob’t Cobbs and after all the above mentioned Transactions, a new Act of Assembly was passed Intitled an Act to Explain and amend and Act for declaring the Negro Mulatto & Indian Slaves within this Dominion to be real Estate and part of one other Act Intitled &c. the material parts whereof follow verbatim “ Whereas the Act made in the 4th “ year of the Reign of the late Queen Anne declaring the Negro “ Mulatto & Indian Slaves within this Dominion to be Real “ Estate hath been found by Experience very Beneficial for “ the preservation and Improvement of Estates in this Colony; “ yet many mischiefs have arisen from the various constructions “ and contrary Judgments and opinions which have been made “ and given there upon whereby many People have been In- “ volved in Law suits and controversies which are still like to “ increase for remedy whereof and to the End the s’d Act may “ be fully & clearly Explained be it Enacted that the s’d Act “ shall hereafter be constr’d [346] And the true Intent and “ meaning thereof is hereby declared to be in the several Cases “ hereafter mentioned as the same is herein after expressed and “ declared and not otherwise that is to say,
“ Whenever any person shall by Bargain and sale or gift “ either with or w’thout deed or by his last Will and Testament “ in Writing or by any Noncupative Will Bargain sell, give dis- “ pose or bequeath any Slave or Slaves such Bargain Sale Gift “ or Bequest shall Transfer the Absolute Property of such Slave “ or Slaves to such person or persons to whom the same shall “be so sold given or Bequeathed in the same manner as if such “ Slave or Slaves were a Chattel, And no Remainder of any Slave “ or Slaves shall or may be Limited by any deed or the last Will “ and Testam’t in Writing of any Person whatsoever otherwise “ than the Remainder of a Chattel personal by the rules of the “ Common Law can or may be Limited except in the manner “ hereinafter mentioned and directed.
“ And that when any Slave or Slaves have been or shall be “ conveyed given or Bequeathed or have or shall descend to any “ Feme Covert the absolute right property & Interest of such “ Slave or Slaves is hereby vested and shall accrue to and be “ vested in the Husband of such Feme Covert.”
“ And that where any Feme Covert is or shall be possessed of *B376 “ any Slave or Slaves as of her own proper Slave or Slaves the “ same shall accrue to and be absolutely vested in the Husband “ of such Feme when she shall marry.
“ And that any Infant above the age of 18. Years by his “ or her Last Will and Testament in Writing may .dispose & “ Bequeath the absolute Right property and Interest of any “ Slave or Slaves whereof he or she shall be possessed
“ And no Slave or Slaves whatsoever shall be forfeited except “ in such Cases where the Lands & Tenements of such Person “ incurring the Forfeiture is should or might be forfeited.
And then the Act goes on and makes a great variety of other new provisions in a variety of other Cases not relating to the Case now in question
At the time when the last mentioned Act passed the s’d Elizabeth the Daughter and sole Heiress of the said Rebecca, was the Wife of the Respondent Shields
In June 1748 (which was 30 years after the Death of the said Rebecca, when the said Slaves had descended to the s’d Elizabeth afterwards Shields and 23 years after the Death of the said Rob’t Cobbs) the now Appellants filed their Bill in the County Court of York in Chancery in Virginia ag’t the Respond’! Stating the said W’m Pinkethmans Will and Death & his devise of the s’d Negroes to his Daughter Rebecca her Heirs and Assignes; and that [347] after his Decease the said Rebecca became seised and possessed of the said Slaves and afterwards married their Father Rob’t Cobbs, by Virtue of which marriage (they insisted) that Rob’t Cobbs became seised and possessed of the said Slaves and their Increase. They also charged that Rob’t Cobbs died having made such Will and Ex’rs and having devised to the Appellants the Residue of his Estate in such manner as herein before Stated; they further Charged that Elizabeth the Widow of Rob’t Cobbs by Virtue of his Will and the Devise therein became possessed of the said Slaves which had been so devised to Rebecca Pinlcethman and their Increase but that she married to Weldon since deceased and died on the 1st of August 1747 and that the now Respondent Shields some time in the Life of the said Elizabeth and of the said Weldon had by some means or other got possession of all the said Slaves which had been devised to Rebecca Pinkethman and had refused to deliver them up to them the then Plaintifs now Appellants and had pretended that he was not obliged to deliver them or their Increase to the said *B377 Plaintifs but that he himself had a title to them by his marriage with Eliz. the Daughter of the said Rebecca Pinkethman, whereas they the Plaintifs charged that the Respondent Shields had no Right or Title to the same by virtue of such his Marriage And
Therefore the plaintiffs prayed a Discovery from the Deft, when and by what means he became possessed of the said Negroes and their Increase & Number Names Ages and Values of such of them as ever came to his Hands or were in his possession and what was become of the same, and that he might be decreed to deliver up the same to the plaintiffs and account with them for the Labour of the said Slaves from the Death of the said Eliz. the Widow of the s’d Rob’t Cobbs and that the Plaintiffs might be relieved according to Equity
The Respondent was extreamly surprised at such an Extraordinary dem’d being now set up by the now Appellants so late as in the Year 1748 when had the Law from 1705 for 22 years together been capable of any such Construction or the Act of 1727. been capable of any such a Retrospect as was now Contended for, there had been in Fact some thousand of Instances where Married Women within that period had had Slaves whose Plusbands might have set up just the like Demand, but there can be no pretence that this discovery had ever been made by any other person or that any one Decree or Judgment had been ever given in Favour of it in any persons Case whatsoever.
And the Appellants Case is attended with this Further Dificulty that as to them when the New Law made was in 1727 the Appellants Father was not the Husband of Rebecca but he & she had both been many years dead [348] her Negroes had 12 years before that Act was made Descended to & were in possession of her Daughter and Heir at Law; and such Daughter was at the time of making that new Act her self a Feme Covert and the Wife of the Respondent Shields.
The Deft. Shields put in his Answer Plea & Demurrer and for answer admitted the Pits, were Devisees under the Will of Robert Cobbs and that William Pinkethman had been seised and possessed of Sundry Slaves and had made his Will in Writing as in the Bill, and a Devise therein to Rebecca of Certain Lands and Slaves and said she was his Daughter & Heir at Law and that his Devise to her could not alter her Title to her Fathers Lands and Slaves but that the same descended to her as Heir at Law and Admitted that she became seised thereof and Afterwards *B378 Entermarried with. Robert Cobbs, who was Father of the Plaintiffs Sarah and Martha by another Venter having had Issue by the said Rebecca, a Daughter Elizabeth Heir at Law to the said Rebecca and Coheir along with the pits Sarah and Martha in the Real Estate of the said Robert Cobbs he admitted that the said Rob’t Cobbs made his Will and soon after died and that his Widow Elizabeth married with Weldon since deceased and that she died about the time in the Bill [sic] and that in the Life time of Weldon and his Wife he the respondent married with Eliz. the Daughter and Heir of Rebecca & Robert Cobbs, and in Right of his Wife got possession of Several Lands and Slaves which by Contracts and other means became Legally vested in her and her Heirs some of which might have descend’d from the Slaves mentioned in Pinkethmans Will and that his said Wife was since dead leaving two Daughters her Heirs at Law and Insisted he was not obliged to discover the Names of any of the s’d Negroes and of their Increase or to deliver any of them to the pits, or to disclose any further Title thereto.
And for plea said that all the Lands and Slaves of Pinkethman descended in Fee to his s’d Daughter and Heir Rebecca and her Heirs in 1712 that she then became seised thereof as the Law required and died about 1715 leaving Issue Eliz her Heir at Law an Infant aged about 11 years who entered on the premises and became seised thereof as the Law required and that her Father Robert Cobbs as Guardian of his said Daughter and in pursuance of a Contract made previous to his Marriage held the said Lands and Slaves as her Guardian, the Legal Estate and the Reversion then being in the s’d Infant Heir and that the said Rob’t Cobbs being [349] then so seised did often in his Life time declare his s’d Contract & disclaimed having any other title in the s’d Infant’s Estate and never removed her Slaves from her Lands and having made his Will he therein particularly mntd his own Lands and slaves one of which he devised to the s’d Infant with her Increase in Lue of the profits of her Estate exceeding her mentenance but omitted all the Lands & Slaves which descended to the s’d Infant aforesaid and for that reason made the Larger distribution under his Will in behalf of the Plaintiffs his other Daughters and Co-heirs and this matter was so fully known and settled that when Robert Cobbs died in the Year 1715, the Slaves of the s’d Infant were not Inventoried nor Considered as any part of the Real or personal Estate of Robert Cobbs, but the s’d *B379 Infant chose Hannah Shields for her Guardian in that Court of Chancery and obtained an order or decree to be put in possession of the s’d Lands & Slaves as the seperate property of the s’d Infant by means whereof the s’d Infant became seised of the s’d Lands and Slaves and the profits thereof from the Death of her s’d Father under the Decree of that County Court of Chancery and so Continued seised untill her Death, under which Decree & relying upon the same he the Deft. Intermar’d with the s’d Infant & thereby became a purchaser for a Valuable Consideration of her said Slaves without Notice of any such pretended Title as now suggested and had Issue by her two Daughters the Heir at Law then Living all which he was ready to verify therefore pleaded the s’d several descents, the s’d Long qui’t and uninterrupted Enjoyment since the death of the said Rebecca and Robert Cobbs and the Stattute of Limitations as also the decree of the s’d Courts and his purchase for a Valuable Consideration under the same without notice in Bar of the Pits. Bill
And seeing it appeared by the Pits, own shewing that they had notice of some Contract or agreement under which he the Deft, had so quietly held & Injoyed the premises he Demurr’d to that part of the Bill which prayed a Discovery of the names of any of the said Negroes or of their Inrcease, or by what special Contract or Deed he held the same seeing a purchas’r for a Valuable Consideration without Notice was not compellable by the rules of Equity to disclose his Title and as the Infant Heirs of his Wife might be affected thereby and were not made parties to the said Bill and Especially as the Pits, deduced their Titles to particular Slaves for the reason aforesaid
The Pits, joined Jssne (as it is called in the proceedings) on the said Plea & Demurrer.
The Court of Chancery ordered the s’d Plea to stand, as and for part of the Defts. Answer but adjudged that the Demurrer was not good and overruled the same and ordered the Deft, to make a further and full answer And to pay the Pits, their Costs occasioned by the s’d Demurrer
From w’ch order the Deft, prayed an Appeal to the third Day of the next Gen’l Court [350] but the Pits, opposed and the Court refused the same as the s’d opinion did not determine the right of the Parties to the Negroes in question
The Deft, put in his further Answer wherein he again set forth and insisted on all the several matters which had been Contained *B380 in his former Answer Plea and Demurrer with some Additional matters also namely that he got Possion in right of his s’d Wife of Several Negroes of Which the 10. Negroes which he then particularly Named were all that remained alive and insisted that he had good right & title to the same and that by the Laws of that Country the right title and Estate of the s’d Negroes vested in the s’d Elizabeth on her Mothers Death in 1715. and that Rob’t Cobbs at the time he made his Will had no right or title to them and since he the s’d Deft, so long an uninterupted [sic] a Posn of the s’d Slaves he pleaded the s’d Act of Assembly of the 4 year of Queen Anne Intitled an Act for Limitation of Actions and avoiding Suits in Bar to the Pits. Pretended Right & title to the s’d Slaves.
The Plaintifs replied and the Deft, rejoined.
And the Cause being at Issue a Witness one Tho’s Cobbs was Examined who fully proved everyone of the material Facts Insisted on by the Respond’ts answers and plea and no other Witness was Examined in the Cause.
The Cause Came on to be heard in the s’d County Court of Chancery upon the s’d Bill answers Plea & Deposition and the same being opened and Council heard on both sides it was ordered and Decreed that the Pits. Bill should be dismissed and that the Parties shoud bear their own Costs
From which decree the Pits, prayed an Appeal to the third day of the next General Court which was allowed upon their giving security to'Prosecute with Effect
And the s’d Appellants filed their reasons of Appeal and thereby insisted that the s’d Decree was Erronious and Contrary to Equity in this that the s’d County Court had ordered their Bill to be dismissed when by the Rules of Equity it ought to have decreed the Slaves in the Bill aforesaid to have been delivered up to’ the Appellants wherefore they prayed that the s’d Decree might be reversed and that the appllee might be Decreed to deliver up the s’d Slaves to them.
And the Respondent insisted there was no Error-in the s’d Decree but that the same was agreeable to the rules of Equity and prayed that the Court woud proceed to Examine as well the Decree as the matter af’sd Assigned for Error and that the Decree might in all things be affirmed [351] The s’d appeal came on to be heard before the president of his Majesties Council and the rest of the Judges of the General *B381 Court in Chancery in Virginia which Court then declared its Opinion that there was no Error in the Decree but that the same was agreeable to the rules of Equity and therefore decreed and ordered the same shoud be in all things affirmed and that the parties should bear their own Costs.
The Appellants not satisfied with the Concurrent opinions of Both Courts in the Colony instantly prayed and were allowed a further Appeal to his Majesty in Council and gave a Security to prosecute according to the royal instruction in that Behalf and ought thereby to have prosecuted the same with Effect within 12. Months from the tenth of October 1751.
But instead thereof purely for creating all the Expence & Vexation to the Respondent that the Appellants Coud do they never took any step towards prosecuting their s’d Appea until Febr. 1753. when more than 16. Month were Elapsed altho it now appears of the Appellants own shewing that the transcript of the papers was had out and Council retained for the Appellants in London so long before as in June 1752.
Under this affected Delay the respondent was under a Necessity of waiting and increasing his Expences as long as ever the Appellants thought Proper to keep back their Appeal or else to petion his Majesty in Council to dismiss the s’d appeal with Costs for non-posecution
And as the respondent could not conceive that ever the Appellants intended to prosecute their Appeal and as such methods of Delay are grown much in Use of Late and seem to be an abuse of his Majesties Jurisdiction to the great Injury of Responds to the present Respondent about the End of January 1753 presented his petion to his Majesty in Council most humbly praying that this Appeal might be dismissed with Costs for posecution.
And his Majesty was pleased by order of reference to refer the s’d Petition to the Consideration of his most Honourable Committee and on the 30th January 1753 the Resp’t by his Council moved their Lordships Accordingly, but their Lordships were pleased to respite the matter for two months
And on the 21. Febr’y then following after that the Appellants in Willful breach of their own Security and of his Majesties royal instructions had vexatiously delayed the respondent and put him to all the Trouble and Additional Expence which was any way in their power presented a petion that their Appeal might be received nunc protunc
*B382 And upon the Appellants motion to their L. ships on the 20. of March 1753. their L. ships were pleased to permit the s’d Appeal to be received on the terms of the Appellants paying 5£ part of the Appellants Extraordinary Costs and being ready to hear their own Appeal in three Weeks otherwise their appeal to be dismissed
The s’d appeal now Coming on tis hoped it will appear without merits and merely Calculated for delay and Vexation and that the same will therefore be dismissed with Examplary Costs to the Respond’t for the following among other [352] Reasons
1st) For that the Act of Assembly of 1st February has not any retrospect to affect the rights of Persons dead antecedent to the passing of that Act but is confined to the rights of Persons living at the time of passing that act or who shall come into Being subsequent thereto, the right and property is Disposed of by this Act only and not by the former Act of the fourth of Queen Anne and per verba de futuro viz the absolute property of such Slaves is hereby vested and shall accrue to “ and be vested in the Husb’d of such-Feme Covert.”
2d) For that the Act of 1. Feb’y 1727. is an Act professedly to amend for the future the Law Concerning Slaves and therefore Enacts “ That the s’d Act of the fourth of the Queen shall here after be Construed and the true intent & Meaning thereof is hereby declared to be, Words properly addapted to the Introduction of a New Law and if the Legislature had intended this Act shoud have a retrospect to the time of passing the Act of the fourth of the Queen the words hereafter & hereby ought to have been omitted
3.) But what seems Decisive in the present Case, is, that the Clause under w’ch the Appellants Claim is manifestly inconsistent with the act of the 4th of Queen Anne and to give a New Law a retrospect if it be within the power, is Contrary to the Justice of any Legislature and therefore such a Construction woud be irrational illegal and unequitable
For which and many other reasons that may be offered the respondent humbly hopes that the s’d Decree of the General Court of Chancery of Virginia of the 10. October 1749. shall be in all things affirmed and the Appellants Appeal be dismissed with full Costs.
A. Hume Campbell.
R. Henly.
*B383 I, W. W. Scott, State Law Librarian of Virginia, do hereby certify that I have diligently compared the foregoing pages with the Manuscript Volume in the State Law Library, marked Barradall’s Reports — and that the said pages are a true and correct copy of the same.
Given under my hand this 6th day of March, 1909.

W. W. Scott,

Librarian.

 Charge? W. W. S.